IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA *ex rel.* KUSTOM PRODUCTS, INC., | : : : | Case No. 2:15-cv-03101 |
| Plaintiff/Relator, | : : | JUDGE ALGENON L. MARBLEY |
| v. | : : | Magistrate Judge Deavers |
| HUPP & ASSOCIATES, INC., | : : | |
| Defendant. | : | |

## **OPINION & ORDER**

This matter is before the Court on Defendant Hupp & Associates, Inc.'s ("Hupp") Motion to Dismiss for failure to state a claim upon which relief can be granted and failure to plead fraud with particularity pursuant to Federal Rules of Civil Procedure 12(b)(6) and 9(b). For the reasons set forth below, Hupp's Motion is **GRANTED**.

## **I. BACKGROUND**

This is a *qui tam* lawsuit brought under the False Claims Act (the "FCA"). 31 U.S.C. §§ 3729–33. Plaintiff/Relator Kustom Products, Inc.'s ("KPI") FCA claims arise out of Hupp's alleged purchase of unauthorized parts in connection with six contracts for maintenance kits awarded to Hupp by the Department of Defense's contracting arm, the Defense Logistics Agency ("DLA"). Hupp is a leading provider of such kits to the Department of Defense. (*See* Compl., Doc. 1, ¶ 3.14.) The DLA uses National Stock Numbers ("NSNs") to identify each unique part used by the government in these kits. (*See id.* ¶ 3.17.) Each kit has its own NSN, as do the individual component parts within each kit. (*Id.* ¶ 3.20.)

More specifically, the six contracts referenced in KPI's Complaint are for annual maintenance kits for the U.S. Military's Family of Medium Tactical Vehicles ("FMTV"). (*Id.*

¶ 3.24.) Each kit contains a variety of FMTV parts, such as "fluid filters, O-ring washers, seals, and nuts." (*Id.* ¶ 3.28.) Each contract is for a slightly different variation of the FMTV kits. (*See id.*) The kits are specified by a technical data package with a drawing (drawing number 57K4845) that identifies the quantity and approved sources of supply for each part. (*See id.* ¶ 3.26.) Unless the contract states otherwise, the supplier must provide the exact parts from the specified manufacturer to fulfill its contractual obligations to the DLA. (*Id.* ¶ 3.22.) At issue here are five variations of the FMTV kit in drawing number 57K4845 with different NSNs. (*Id.* ¶ 3.27.) Each contract required Hupp to include two different types of seals (each type with its own NSN) in each kit. (*See* Def.'s Mot. to Dismiss, Doc. 24, at 3.)

According to the Complaint, pursuant to drawing number 57K4845, "the only approved sources of supply" for the seals in the FMTV kits are AxleTech, International, Inc. and Meritor Heavy Vehicle Systems, LLC. (*See* Compl. ¶¶ 3.32, 3.33.) Meritor manufactures the seals, and AxleTech distributes seals that it obtains from Meritor. (*Id.* ¶ 3.34.) With regard to each of the six contracts identified in the Complaint, KPI alleges that, "in the course of business," it learned "from AxelTech [sic] and Meritor that at or around the time [the contract] was awarded to Hupp, Hupp did not purchase these seals from AxelTech or Meritor." (*Id.* ¶¶ 3.49, 3.64, 3.78, 3.92, 3.106, 3.121.) KPI also claims "upon information and belief" that, for each contract: (1) Hupp was able to provide the DLA with the maintenance kits at a lower cost by supplying seals that were not manufactured by AxleTech or Meritor; (2) Hupp certified under the contract that it provided the proper seals in each kit; and (3) Hupp submitted an invoice to the government for the seals and has been paid for those seals. (*See id.* ¶¶ 3.50, 3.53, 3.54, 3.56, 3.65, 3.69, 3.71, 3.79, 3.82, 3.83, 3.85, 3.93, 3.96, 3.97, 3.99, 3.107, 3.110, 3.111, 3.113, 3.122, 3.125, 3.126, 3.128.)

KPI filed its Complaint against Hupp in December 2015. (Doc. 1.) The United States declined to intervene in the lawsuit in July 2016. (*See* Doc. 8.) Hupp now moves to dismiss KPI's Complaint in its entirety.[1] Hupp's motion is fully briefed and ripe for adjudication.

## II. STANDARD OF REVIEW

KPI's Complaint should be dismissed under Federal Rule of Civil Procedure 12(b)(6) if it "fail[s] to state a claim upon which relief can be granted." Generally, a complaint must merely contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The district court, in turn, "must treat as true all of the well-pleaded allegations of the complaint." *Bower v. Fed. Express*, 96 F.3d 200, 203 (6th Cir. 1996). This "tenet is inapplicable to legal conclusions, or legal conclusions couched as factual allegations." *McCormick v. Miami Univ.*, No. 1:10-cv-345, 2011 WL 1740018, at *4 (S.D. Ohio May 5, 2011) (citing *Ashcroft v. Iqbal*, 556 U.S. 662 (2009)). KPI's ground for relief must entail more than "a formulaic recitation of the elements" of a cause of action. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

A well-pleaded complaint must "give the defendant fair notice of what the claim is, and the grounds upon which it rests." *Nader v. Blackwell*, 545 F.3d 459, 470 (6th Cir. 2008). The plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. To "survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), the 'complaint must contain either direct or inferential allegations respecting all the material elements to sustain a recovery under some viable legal theory.'" *Noble v. Genco I, Inc.*, No. 2:10-cv-648, 2010 WL 5541046, at *2 (S.D. Ohio Dec. 30, 2010) (quoting *Scheid v. Fanny Farmer Candy Shops, Inc.*, 859 F.2d 434, 436 (6th Cir. 1988)). Finally, the complaint

---

[1] Hupp denies that it submitted false claims in connection with the FMTV maintenance kits; its Motion "deals only with the sufficiency of the allegations set forth in KPI's Complaint." (Doc. 24 at 3 n.1.)

must be construed in a light most favorable to the party opposing the motion to dismiss. *See Watson Carpet & Floor Covering, Inc. v. Mohawk Indus., Inc.*, 648 F.3d 452, 456 (6th Cir. 2011).

In addition, Federal Rule of Civil Procedure 9(b) requires that "in any complaint averring fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." *Yuhasz v. Brush Wellman, Inc.*, 341 F.3d 559, 563 (6th Cir. 2003). The heightened pleading standard set forth in Rule 9(b) applies to complaints alleging violations of the FCA. *Id.* A complaint's failure to comply with Rule 9(b)'s pleading requirements is treated as a failure to state a claim under Rule 12(b)(6). *United States ex rel. Howard v. Lockheed Martin Corp.*, 499 F. Supp. 2d 972, 976–77 (S.D. Ohio 2007).

### III. LAW AND ANALYSIS

#### A. KPI's FCA Claims Are Not Pleaded with Particularity.

KPI brings claims under §§ 3729(a)(1)(A) and (B) of the FCA. (Compl. at 18–19.) Section 3729(a)(1)(A), the "presentment" section, imposes liability on any person who "knowingly presents, or causes to be presented, a false or fraudulent claim for payment or approval." Under the "false statement" section of the FCA, § 3729(a)(1)(B), anyone who "knowingly makes, uses, or causes to be made or used, a false record or statement material to a false or fraudulent claim" will be held liable.

As stated above, "[b]ecause the basis for a *qui tam* action is *fraud* in the filing of claims against the government," the Sixth Circuit has held that, in FCA actions, the "allegations in the complaint must comply with the particularity requirements of Federal Rule of Civil Procedure 9(b)." *Sanderson v. HCA-The Healthcare Corp.*, 447 F.3d 873, 876–77 (6th Cir. 2006) (emphasis in original). Thus, to satisfy Rule 9(b), KPI must at a minimum "allege the time,

4

place, and content of the alleged misrepresentation" as well as "the fraudulent scheme; the fraudulent intent of the defendants; and the injury resulting from the fraud." *Bennett v. MIS Corp.*, 607 F.3d 1076, 1100 (6th Cir. 2010) (internal citations omitted); *see also Sanderson*, 447 F.3d at 877 ("Rule 9(b) requires that the plaintiff specify the 'who, what, when, where, and how' of the alleged fraud.").

### 1. KPI's Presentment Claim Is Not Pleaded with Particularity.

The "critical element of nearly any FCA violation is the actual *presentment* of a false claim to the government for payment or approval." *United States ex rel. Dennis v. Health Mgmt. Assocs., Inc.*, No. 3:09-cv-00484, 2013 WL 146048, at *14 (M.D. Tenn. Jan. 14, 2013) (emphasis in original). Indeed, it is the making of the fraudulent claim that is the "*sine qua non* of a False Claims Act violation." *Sanderson*, 447 F.3d at 478. For this reason, the Sixth Circuit imposes a "strict requirement that relators identify actual false claims." *Chesbrough v. VPA, P.C.*, 655 F.3d 461, 473 (6th Cir. 2011); *United States ex rel. Bledsoe v. Cmty. Health Sys., Inc.*, 501 F.3d 493, 509 (6th Cir. 2007) ("[A] relator bringing an action under the FCA must allege specific false claims with particularity in order to comply with Rule 9(b).").

The sum total of KPI's allegations about Hupp's purported presentment of false claims to the government is its assertion that "upon information and belief, Hupp submitted at least one invoice" for the supplies provided under each of its six contracts with the DLA, and that Hupp was paid for those supplies. (*See* Compl. ¶¶ 3.56, 3.71, 3.85, 3.99, 3.113, 3.128.) As an initial matter, allegations "on information and belief" that Hupp submitted false claims to the government are insufficient under Rule 9(b). *See United States ex rel. Marlar v. BWXT Y-12, L.L.C.*, 525 F.3d 439, 445–46 (6th Cir. 2008). A relator may not describe "an alleged fraudulent billing scheme in detail but then allege simply and without any stated reason for his belief that

5

claims requesting illegal payments must have been submitted, were likely submitted, or should have been submitted" to the government; rather, a relator "must identify the specific claims that were submitted to the United States." *Id.* at 446. More specifically, a relator must set forth:

> (1) precisely what statements were made in what documents or oral representations or what omissions were made, and (2) the time and place of each such statement and the person responsible for making (or in the case of omissions, not making) same, and (3) the content of such statements and the manner in which they misled the government, and (4) what the defendants obtained as a consequence of the fraud.

*Sanderson*, 447 F.3d at 877 (citing *United States ex rel. Clausen Lab. Corp. of Am., Inc.*, 290 F.3d 1301, 1310 (11th Cir. 2002)). KPI's speculative allegations that "on information and belief" Hupp has invoiced the government for parts supplied under the contracts fall far short of meeting the Rule 9(b) standard.

Case law from various courts within the Sixth Circuit supports this conclusion. In *Sanderson*, the Sixth Circuit affirmed the dismissal of a relator's FCA complaint where the relator failed to identify any *specific* "claims that were submitted to the United States or identify the dates on which those claims were presented to the government and relie[d] instead exclusively on conclusory allegations of fraudulent billing." 447 F.3d at 877–78. Similarly, the *Marlar* court found a relator's presentment claim insufficient under Rule 9(b) where she alleged only "on information and belief" that fraudulent claims were submitted to the government, and failed to: (1) provide "dates on which the purportedly false certifications were submitted"; (2) allege "who submitted the purportedly false certifications"; and (3) allege "any other specific information about the certifications allegedly submitted." *Marlar*, 525 F.3d at 446; *see also, e.g.*, *United States ex rel. Doe v. Jan-Care Ambulance Serv.*, 187 F. Supp. 3d 786, 793 (E.D. Ky. 2016) (dismissing FCA claims due to relator's failure to identify a false claim submitted to the government); *Dennis*, 2013 WL 146048, at *15 (dismissing relator's presentment claim where

6

relator made only "very general and conclusory" allegations regarding the submission of false claims to the government and did not include details such as "when the claims were submitted to the government, or what payment from the government was obtained as a result of such claims").

KPI attempts to circumvent its insufficient allegations in two ways. First, it cites pre-*Chesbrough*, *Sanderson*, and *Marlar* case law for the propositions that: (1) identifying the "specific contract at issue" and stating "when, where, and how false statements were made to the government" negates the need to "identify the actual dates that false claims were submitted to the government"; and (2) a relator that "alleges that all billings and invoices arising out of a specific contract are fraudulent does not need to identify the exact dates of billings." (Doc. 26 at 10–11 (citing *United States ex rel. Roby v. Boeing Co.*, 184 F.R.D 107 (S.D. Ohio 1998) and *United States ex rel. United Techs. Corp.*, No. C-3-99-093, 2000 WL 988238 (S.D. Ohio Mar. 20, 2000))). But KPI misses the point. It is not only dates that are missing. KPI provides *no* details about its knowledge of Hupp's internal billing and claims processes and points to no conversations with Hupp employees about alleged fraud. Instead, KPI relies solely on its general knowledge of government contracting from its years of being a "first-tier distributor for many vehicle parts supplied to the federal government." (Compl. ¶ 3.12.) The vast majority of its allegations specifically directed at Hupp are conclusory and based only "on information and belief."

Second, KPI reminds the Court that it may "relax" the requirement that it identify specific false claims "in circumstances where a relator demonstrates that he cannot allege the specifics of actual false claims that in all likelihood exist, and the reason that the relator cannot produce such allegations is not attributable to the conduct of the relator." *Chesbrough*, 655 F.3d at 470. KPI relies heavily on this Court's decision denying a defendant's motion to dismiss in

*United States ex rel. McDonough v. Symphony Diagnostic Servs., Inc.* No. 2:08-CV-00114, 2012 WL 628515 (S.D. Ohio Feb. 27, 2012) (Marbley, J.). In *McDonough*, this Court "relax[ed]" the "specific claim requirement," finding that the relator pleaded facts that supported a "strong inference" that a false claim was submitted, and the inference arose from the relator's "personal experience" with the defendant. *Id.* at *8. In particular, the Court noted that the relator alleged "specific conversations" with the defendant's CEO about fraud and provided "representative example[s]" of the defendant's alleged fraudulent conduct, which warranted a relaxing of the specific claim requirement. *See id.* at *9.

Such a relaxation of Rule 9(b)'s requirements is not justified here. KPI claims that it has "alleged sufficient particularities drawn from its own personal experience as a first-tier distributor with relationships among manufacturers, distributors, and [the] DLA to raise the strong inference that Hupp submitted invoices on contracts it was awarded and supplied." (Pl.'s Mem. Opp'n to Def.'s Mot. to Dismiss, Doc. 26, at 16.) KPI asserts that it has "direct and independent knowledge" of Hupp's alleged fraud "through its business and communications." (*See* Compl. ¶¶ 1.4, 1.5.) But it does not elaborate on how it gained this knowledge. Construing the allegations in KPI's Complaint in its favor, as the Court must, the only allegation pertaining to how KPI may have this knowledge states that "[f]rom 2005 through 2010, KPI contracted with the federal government and . . . developed relationships with manufacturers and distributors and became a first-tier distributor for many vehicle parts supplied to the federal government." (*See id.* ¶ 3.12.) KPI does not identify any specific communications with or related to Hupp, nor does it detail how its relationships with manufacturers and distributors gave it "direct" knowledge of Hupp's business practices. Rather, most of KPI's allegations are based "on information and belief" and refer vaguely to things that KPI learned "[i]n the course of its business," without

elaborating. These overly broad allegations are wholly insufficient to create a "strong inference" that Hupp submitted false claims to the government. *See McDonough*, 2012 WL 628515, at *8.[2]

While KPI's failure to sufficiently allege Hupp's presentment of false claims to the government is fatal to its claim under § 3729(a)(1)(A) of the FCA, the Court notes that KPI's allegations about the fraudulent nature of Hupp's conduct are also lacking. While KPI claims that its identification of the contracts, NSNs of the parts and kits, prices of seals, and its broad allegation that "Hupp certified that the kits would be manufactured in accordance with all drawings and specifications stated in the solicitation" is enough (Compl. ¶¶ 3.47, 3.62, 3.77, 3.91, 3.104, 3.119), these allegations do not meet the Rule 9(b) standard. KPI has not identified how or when Hupp certified to the government that it complied with the contracts, or the content of Hupp's certifications. Nor does KPI pinpoint who at Hupp was substituting the seals, or from whom Hupp obtained the noncompliant seals. For this additional reason, KPI's first cause of action fails to state a claim upon which relief can be granted.

### 2. KPI's False Record Claim Is Not Pleaded with Particularity.

KPI's second cause of action is a false record claim under § 3729(a)(1)(B) of the FCA.

---

[2] Two other points are relevant to the Court's decision declining to relax the requirement that KPI identify a specific false claim presented to the government. First, with regard to KPI's claimed personal knowledge of Hupp's practices, Hupp correctly notes that in both *McDonough* and *United States ex rel. Prather v. Brookdale Senior Living Communities, Inc.*, 838 F.3d 750 (6th Cir. 2016)—another case upon which KPI relies—the relators who had personal knowledge sufficient to justify relaxation of Rule 9(b) were both "former employees with first-hand knowledge of [the defendants'] billing practices and the alleged fraud." (Def.'s Reply in Support of Mot. to Dismiss, Doc. 31, at 9.) KPI, by contrast, is an "outside competitor with no involvement or understanding of Hupp's internal processes. Hupp does not do business or otherwise have a relationship with KPI," and "KPI does not allege as much in its Complaint." (*Id.*) Second, in its recent decision in *United States ex rel. Hirt v. Walgreen Co.*, the Sixth Circuit confirmed the rarity with which it has relaxed Rule 9(b)'s requirements and also plainly stated that in cases like this one, where a relator "fail[s] to provide the factual predicates necessary to convince [the court] that actual false claims in all likelihood exist," there is no basis for applying the relaxed standard. 846 F.3d 879, 882 (6th Cir. 2017) (commenting that the Sixth Circuit has, "[i]n practice, . . . applied the 'relaxed standard' just once").

"As with a claim under other provisions of § 3729, a claim for relief under § 3729(a)(1)(B), to survive Rule 9(b) scrutiny, must provide sufficient detail regarding the time, place and content of the defendant's allege[d] false statements and the claim for payment." *Dennis*, 2013 WL 146048, at *17. Because KPI has failed to provide sufficient detail about Hupp's purported false statements, as described above, KPI's false record claim fails for this reason alone.

Additionally, however, the Court notes that KPI's false record claim—like its presentment claim—is premised on Hupp allegedly "knowingly submitt[ing] invoices for payment on contracts with [the] DLA for which Hupp provided unauthorized and substitute parts." (Compl. ¶ 5.5.) It appears that KPI is attempting to "skirt" the presentment requirement in § 3729(a)(1)(A) by pleading a claim based on identical conduct under § 3729(a)(1)(B). *See Chesbrough*, 655 F.3d at 472. But what a false record claim "demands is not proof that the defendant caused a false record or statement to be presented or submitted to the Government but that the defendant made a false record or statement for the purpose of getting 'a false or fraudulent claim paid or approved by the Government.'" *Id.* (quoting *Allison Engine Co. v. United States ex rel. Sanders*, 553 U.S. 662, 671 (2008)). KPI points to its allegation that "Hupp also certified to the government that its shipments conformed to all contract requirements" as the basis of its false record claim (*see* Compl. ¶ 5.5), but, like the allegations supporting its presentment claim, this conclusory allegation is wholly lacking any factual development.

And as Hupp correctly states, the only additional allegations about Hupp's certification in KPI's Complaint state that "[*p*]*rior to the award of* [*contract number*], Hupp certified that the kits to be supplied to the DLA under the contract would be manufactured in accordance with all drawings and specifications stated in the solicitation." (Doc. 31 at 12 (citing Compl. ¶¶ 3.47, 3.62, 3.77, 3.91, 3.104, 3.119 (emphasis added)).) But KPI provides no further information: it

does not bother to "identify the proposals, let alone provide details on when the proposals were submitted, what was purportedly false about them, and how they relate to a false claim for payment." (*Id.*)  Because KPI has not specified the "who, what, when, where, and how" of its false record claim, it must also be dismissed.  *See Sanderson*, 447 F.3d at 877.

### B.  KPI Cannot Now Amend Its Insufficient Complaint.

Although it argues that its Complaint is sufficient, KPI alternatively requests leave to amend "if the Court finds that the Complaint is not specific enough in any respect to satisfy Rule 9(b)," because KPI "has additional information that it did not include in its Complaint about each of the contracts and claims for payment." (Doc. 26 at 19.)

When considering whether a party has met the Rule 9(b) particularity requirement, federal courts must be liberal in allowing parties to amend their complaints.  *See Coffey v. Foamex, L.P.*, 2 F.3d 157, 162 (6th Cir. 1993) (internal citation omitted).  However, a court need not permit amendment "under . . . circumstances [that] would encourage delay and bad faith." *Glazer v. Chase Home Fin., LLC*, 704 F.3d 453, 458–59 (6th Cir. 2013).  One such circumstance where amendment would be prejudicial and encourage delay is this exact scenario: where a party in its response to a defendant's motion to dismiss seeks leave to amend in the event the Court finds the original complaint deficient.  *See Begala v. PNC Bank, Ohio, Nat'l Ass'n*, 214 F.3d 776, 783 (6th Cir. 2000).  Rather than amending its Complaint in response to Hupp's motion to dismiss under Rule 15(a)(1)(B) as it should have, KPI now seeks an "advisory opinion" from this Court "informing [it] of the deficiencies of the complaint and then an opportunity to cure those deficiencies."  *Id.* at 784.  KPI is not entitled to such an opinion, and its "open request for the Court to permit amendment to cure deficiencies" will not "defeat [Hupp's] meritorious motion to dismiss."  *Id.*  Accordingly, KPI's request for leave to amend its Complaint is **DENIED**.

## IV.  CONCLUSION

For all of the foregoing reasons, Hupp's Motion to Dismiss is **GRANTED**.  This case is **DISMISSED** with prejudice.

**IT IS SO ORDERED.**

                 **s/Algenon L. Marbley**
               **ALGENON L. MARBLEY**
               **UNITED STATES DISTRICT JUDGE**

**DATED:  May 12, 2017**